**[Cite as *State v. Frazier*, 2021-Ohio-2945.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|   |   |   |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 28988 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2017-CR-3307 |
| v. | : | |
| | : | (Criminal Appeal from |
| JUSTIN T. FRAZIER | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of August, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant
Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division,
Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio
45422
      Attorney for Plaintiff-Appellee

KRISTIN L. ARNOLD, Atty. Reg. No. 0088794, 120 West Second Street, Suite 1717,
Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Justin T. Frazier appeals from his conviction following a no-contest plea to one count of felony operating a vehicle while under the influence of alcohol and refusing a breath test in violation of R.C. 4511.19(A)(2).

{¶ 2} In his sole assignment of error, Frazier challenges the trial court's denial of his motion to suppress field-sobriety test results. He argues that a trooper administering the tests failed to conduct them in substantial compliance with National Highway Traffic Safety Administration (NHTSA) standards.

{¶ 3} The record reflects that Ohio State Highway Patrol Trooper Eric Frost initiated a traffic stop after Frazier made a wide left turn and changed lanes without signaling. Upon approaching Frazier's vehicle, Frost detected a strong odor of alcohol and noticed signs of impairment. Frazier's speech was slow and slurred. He also "fumbled through his wallet" as if he lacked dexterity in his fingers. Frazier appeared to be "struggling with normal movements." He admitted to the trooper that he had consumed some alcohol.

{¶ 4} Trooper Frost proceeded to have Frazier perform three field-sobriety tests: the horizontal-gaze-nystagmus (HGN) test, the walk-and-turn test, and the one-leg-stand test. Based on Frazier's performance, Frost arrested him for operating a vehicle while under the influence of alcohol. A grand jury subsequently indicted Frazier on two counts: (1) operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a); and (2) operating a vehicle while under the influence of alcohol and refusing a breath test in violation of R.C. 4511.19(A)(2). Because Frazier had three prior OVI convictions within 10 years, the charges were fourth-degree felonies under R.C.

4511.19(G)(1)(d).

{¶ 5} Frazier moved to suppress the field-sobriety test results, arguing among other things that Trooper Frost failed to conduct the tests in substantial compliance with NHTSA standards. The trial court overruled the motion following a January 19, 2018 hearing. Frost then entered a no-contest plea to count two in exchange for the dismissal of count one. The trial court accepted the plea and made a finding of guilt. It sentenced Frazier to community-control sanctions that included a 120-day jail sentence.

{¶ 6} On appeal, Frazier challenges the trial court's suppression ruling. He argues that the HGN test and the walk-and-turn test were administered improperly and, therefore, that the results of those two tests should have been suppressed. With regard to the HGN test, Frazier contends Trooper Frost violated NHTSA standards by (1) failing to test for or to identify whether Frazier had "resting gaze nystagmus," (2) using a finger as a stimulus, and (3) holding a flashlight in Frazier's face. As for the walk-and-turn test, Frazier claims the trooper violated NHTSA standards by (1) failing to tell him how to stand while instructions were being given and (2) failing to tell him to count out loud as he walked.

{¶ 7} As Frazier correctly recognizes, the applicable legal requirement for admission of field-sobriety test results is whether the tests were conducted in substantial compliance with NHTSA standards. *State v. Davis*, 2d Dist. Clark No. 2008-CA-65, 2009-Ohio-3759, ¶ 14-15. Substantial compliance "is a legal standard for a court's determination." *Id.* at 18. "We defer to the trial court's factual findings and independently determine whether they demonstrate substantial compliance" with NHTSA standards. *Id.*

{¶ 8} Here the trial court rejected each of Frazier's arguments about deficiencies in the HGN test. It reasoned:

The Court is not persuaded by Frazier's argument that Trooper Frost did not perform the tests in substantial compliance because he did not specify that he tested Frazier's resting nystagmus, he shone the flashlight on Frazier's forehead, and used his finger as a stimulus. The NHTSA manual does not specify that there is a test of resting nystagmus, which involves an involuntary jerking of the eyes as they gaze straight ahead. Def. Exh. C. Trooper Frost testified that he did not observe this resting nystagmus in Frazier. The NHTSA manual also does not specify where a light is to be shone in order to see a stimulus at night, and does not explain what type of stimulus is to be used. Def. Exs. B-E. Therefore, Trooper Frost administered the HGN and VGN tests in substantial compliance with the NHTSA manual.

(April 9, 2018 Decision, Order and Entry at 8.)

{¶ 9} Upon review, we see no error in the trial court's decision. The trial court correctly noted that the NHTSA manual does not prescribe a particular "test" for observing resting nystagmus, and Trooper Frost testified that he did check for it, finding "equal pupil size and no resting nystagmus." (Tr. at 10.) The NHTSA manual also does not prohibit using a finger as a stimulus for a driver to track with his eyes. In fact, page 18 of "Session 3" of NHTSA's 2018 "DWI Detection and Standardized Field Sobriety Testing Refresher" participant manual states that an appropriate stimulus "can be a pen, eraser on a pencil, the tip of a penlight, the tip of your finger, or any similar small object." Likewise, page 39 of "Session 8" of NHTSA's full 2018 participant manual states that "[t]he stimulus may be the eraser on a pencil, the tip of a penlight, the tip of your finger, or any similar small

object." Finally, the trial court observed that the NHTSA manual does not specify where a light should be shined when illuminating a stimulus. Trooper Frost explicitly testified that he did not shine a light in Frazier's eyes when performing the HGN test, and the trial court made a factual finding that the light shined on Frazier's forehead. (Tr. at 30; April 9, 2018 Decision, Order and Entry at 2.) Having reviewed the record, we agree with the trial court's determination that Trooper Frost performed the HGN test in substantial compliance with NHTSA standards.

**{¶ 10}** With regard to the walk-and-turn test, the NHTSA manual divides the test into two stages: (1) the instruction stage and (2) the walking stage. For the first stage, the manual states that a driver is to be told to position his feet heel-to-toe with his hands at his side and to maintain that position while being instructed how to perform the test. On appeal, Frazier claims there was a "significant amount of confusion" regarding whether Trooper Frost told him to get into the proper position to listen to the remainder of the instructions. During the hearing, defense counsel suggested that Frost gave instructions about how to perform the test without first placing Frazier in the proper position. In support, counsel played a portion of a video recording of the field-sobriety test. Trooper Frost disagreed. He testified that during the portion of the video at issue he had not yet finished explaining how Frazier was to stand. Frost stated that he first had to explain the proper standing position to Frazier, and get him into that position, before the trooper could proceed with instructions on how to perform the actual test. (Tr. at 40-48.) The trial court credited Trooper Frost's testimony. It found that "[o]nce Frazier mimicked Trooper Frost and stood in the required heel-to-toe stance with his arms at his sides, Trooper Frost instructed Frazier on how to perform the test." (April 9, 2018 Decision, Order and Entry at

9.) A cruiser recording confirms that the trooper explained the proper standing position and got Frazier into it before proceeding with the rest of the instructions. Finally, Frazier contends Trooper Frost violated NHTSA standards by failing to tell him to count out loud as he walked. We reject this argument. Trooper Frost testified that he did tell Frazier to count out loud. (Tr. at 49.) This testimony was confirmed by the cruiser video, which also established that Frazier did count out loud as instructed. Under these circumstances, we see no error in the trial court's finding of substantial compliance.

{¶ 11} Frazier's assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Elizabeth A. Ellis
Kristin L. Arnold
Hon. Michael W. Krumholtz